UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CAPITAL FUNDING, LLC | |
| v. | CIVIL ACTION |
| WEST JEFFERSON PROPERTY HOLDING COMPANY, L.L.C., LHCC MASTER LEASE, L.L.C.; ST. ELIZABETH'S CARING, L.L.C. d/b/a WEST JEFFERSON HEALTH CARE CENTER | NO. _____ SECTION _____ |

**VERIFIED COMPLAINT TO COLLECT PROMISSORY NOTE AND GUARANTIESTO FORECLOSE ON MORTGAGE AND SECURITY AGREEMENTS, FOR ISSUANCE OF A WRIT OF SEQUESTRATION, AND FOR APPOINTMENT OF A KEEPER**

Plaintiff Capital Funding, LLC ("Capital") files this Verified Complaint to Collect Promissory Note and Guaranties, to Foreclose on Mortgage and Security Agreements, for Issuance of a Writ of Sequestration, and for Appointment of a Keeper (the "Complaint"), and respectfully states as follows:

**Preliminary Statement**

1.      This is a civil action to enforce a promissory note and guaranties; to foreclose upon a mortgage and security interests on certain immovable and movable property described more fully below (the "Mortgaged Property"); to obtain a writ of sequestration for the Mortgaged Property; and to obtain an order appointing H.G.I., LLC as keeper for the Mortgaged Property (the "Keeper"), all as provided for in the promissory note, mortgage, and other loans documents described more particularly below.

# I.  Parties

2.      Capital is a Maryland limited liability company. Capital's sole member is CFG Community Bank, a bank charted by the State of Maryland with its principal place of business at 1422 Clarkview Road, Baltimore, Maryland 21209 located in Maryland. Accordingly, Capital is a citizen of the State of Maryland.

3.      Defendant, West Jefferson Property Holding Company, L.L.C. ("Borrower"), is a Louisiana limited liability company. Upon information and belief, Borrower has one member, Bob G. Dean, Jr., an individual domiciled in Georgia. A limited liability company is a citizen of each state where each of its members is a citizen. Accordingly, Borrower is a citizen of the State of Georgia.

4.      Defendant, LHCC Master Lease, L.L.C. ("Master Tenant"), is a Louisiana limited liability company. Upon information and belief, Master Tenant has one member, Bob G. Dean, Jr., an individual domiciled in Georgia. A limited liability company is a citizen of each state where each of its members is a citizen. Accordingly, Master Tenant is a citizen of the State of Georgia.

5.      Defendant, St. Elizabeth's Caring, L.L.C. d/b/a West Jefferson Health Care Center ("West Jefferson"), is a Louisiana limited liability company. Upon information and belief, West Jefferson has one member, Bob G. Dean, Jr., an individual domiciled in Georgia. A limited liability company is a citizen of each state where each of its members is a citizen. Accordingly, West Jefferson is a citizen of the State of Georgia.

4859-7767-5008 v1

## II.  Jurisdiction

6.      This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Capital and Defendants, and because the amount in controversy exceeds $75,000, excluding interest and costs. Capital is a citizen of the State of Maryland for purposes of diversity jurisdiction because its sole member is a citizen of that state. Borrower, Master Tenant, and Uptown are all citizens of Georgia because their ultimate member, Bob G. Dean, Jr. is a natural person and a citizen of the State of Georgia. Accordingly, there is complete diversity of citizenship between Capital and Defendants. Capital seeks recovery of more than $75,000, excluding interest and costs, which satisfies the amount in controversy requirement.

7.      This Court has personal jurisdiction over Defendants because Defendants regularly transacts business in Louisiana. Further, this action arises from a promissory note signed and delivered in Louisiana, and this action seeks to foreclose on immovable property located in Louisiana.

## III.  Venue

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).  The promissory note and other loans documents were signed and delivered in Louisiana. Further, the property that is the subject of this civil action is situated in this District.

## IV.  Statement of Factual Background for Claims

### A.      Purpose of the Loan and the Master Lease Agreement.

9.      The promissory note described below was given in 2017 as part of a U.S. Department of Housing and Urban Development ("HUD")-insured mortgage financing

3

4859-7767-5008 v1

whereby Borrower refinanced the then-existing mortgage indebtedness on the Mortgaged Property with a new loan from Capital (the "Loan").  There was, until recently, operating on the Mortgaged Property, located at 1020 Manhattan Boulevard, Harvey, LA 70058, a 104-bed skilled nursing home facility (the "SNF") doing business as West Jefferson Health Care Center.

10.    As part of the making of the Loan, an affiliate of Borrower, West Jefferson, leased the SNF from Master Tenant. Master Tenant, also an affiliate of Borrower, leased the SNF from Borrower pursuant to the terms of that certain Master Lease dated June 1, 2013 (as thereafter amended and modified from time to time, including by that certain Joinder and Amendment to HUD Facilities Master Lease dated as of September 1, 2017, collectively, the "Master Lease").  The parties to the Master Lease include Borrower and three other property-owner affiliates of Borrower, as landlords, and Master Tenant, as master tenant.  Master Tenant, in turn, subleases each of the four properties to four separate affiliates of Borrower, including West Jefferson, as Subtenants, pursuant to the terms of four separate subleases (the "Subleases"). A true and correct copy of the Master Lease as joined by Borrower as of September 1, 2017 is attached to this Complaint and incorporated by reference as **Exhibit 1**.

11.    Under the terms of the Master Lease, Master Tenant and any Subtenants (here, West Jefferson) are required to maintain all licenses, permits, and other approvals needed to operate the Mortgaged Property as a skilled nursing facility. Exhibit 1, p. 17 (Section 10.1). Further, the Master Lease provides that Master Tenant's or any Subtenant's loss of any license, permit, or other approval necessary or required to operate the

4

4859-7767-5008 v1

Mortgaged Property as a skilled nursing facility is an Event of Default (as defined therein). Exhibit 1, p. 30 (Section 17.1(l)).

12.     At all times relevant herein until September 7, 2021, West Jefferson held a license (the "License") issued by the Louisiana Department of Health (the "LDH") to operate the SNF as a 104-bed skilled nursing facility.  A true and correct copy of West Jefferson's license is attached hereto as **Exhibit 2**.

13.     By an order dated September 7, 2021, the LDH revoked West Jefferson's License to operate the SNF, alleging that operating and care violations by West Jefferson at the SNF "… pose an imminent or immediate threat to the health, welfare or safety of a participant [resident]; as such, the imposition of the license revocation is hereby IMMEDIATE…" (the "Revocation Order"; page 10; emphasis in the original).  A copy of the Revocation Order is attached hereto as **Exhibit 3**.   As a result of the Revocation Order, West Jefferson is no longer licensed to admit residents, to bill for services, or to operate the SNF.

14.     Borrower, West Jefferson, Master Tenant, and the other affiliates identified above are all controlled by Mr. Bob G. Dean, Jr. ("Dean").

**B.     Suit on Promissory Note dated September 1, 2017.**

15.     Capital is the owner and holder of that certain Promissory Note given by Borrower, dated September 1, 2017, in the original principal amount of $5,107,000.00, bearing interest at the rate of 3.89% per annum (as amended and/or modified, the "Note"), which is the promissory note referenced above. The Note requires consecutive monthly payments on the first day of each month in the amount of $24,058.85 until paid, and a final

5

payment of all outstanding principal and interest due on or before October 1, 2047, absent an "Event of Default," as that term is defined in the Note. The Note is payable "to the order of Capital Funding, LLC." A true and correct copy of the Note is attached hereto and made a part of this Complaint as **Exhibit 4**.

16.     The Notes states as follows with regard to a payment default: "If a Monetary Event of Default occurs and is continuing, for a period of thirty (30) days, the entire unpaid principal balance, any accrued interest and all other amounts payable to Lender under this Note and any of the other Loan Documents shall at once become due and payable, at the option of Lender, without any prior notice to Borrower." Exhibit 4, p. 3.

### C.     The Mortgage Securing the Note.

17.     To provide security for Borrower's debts and to induce Capital to extend credit under the Note, Borrower executed that certain "Healthcare Act of Mortgage, Pledge of Leases and Rents, and Security Agreement" dated September 1, 2017 (the "Mortgage"). The Mortgage "irrevocably mortgages, grants, conveys and assigns to Lender and Lender's successors and assigns, with power of sale, the Mortgaged Property, including the Land located in Jefferson Parish, State of Louisiana and described in Exhibit A . . . to have and hold the Mortgaged Property unto Lender and Lender's successors and assigns." Exhibit 5, p. 1.

18.     The Mortgage was filed in the Mortgage Records for Jefferson Parish on September 19, 2017, and bears Mortgage Instrument Number 11740387, Book 4745, Page 984. A true and correct copy of the Mortgage is attached hereto and made a part of this Complaint as **Exhibit 5**.

6

19.     The immovable property mortgaged and hypothecated unto Capital as the

Lender by Borrower has a municipal address of 1020 Manhattan Boulevard, Harvey, LA

70058, and is more particularly described in the Mortgage at its Exhibit A as follows:

> ONE CERTAIN LOT OF GROUND, together with all the buildings and improvements thereon, situated in the Parish of Jefferson, State of Louisiana, in as that part thereof know as Mayronne Tract, Gardere Plantation, designated as Lot No. 43B-10, as per resubdivision approved by Ordinance 10200 of the Jefferson Parish Council recorded at COB 738, folio 53. According to survey of Adloe Orr, Jr. and Associates a copy of which is recorded in Jefferson Parish public records at Plan Book 73, folio 11, Lot 43B-10 is located in a square bounded by Manhattan Boulevard, Apache Drive, Sandalwood, Eunice Drive, Beechwood Drive and the Westbank Expressway and said lot commences as a point 146.34 feet north of Apache Drive fronting 200 feet on Manhattan Boulevard, by depth of 501.11 feet on the southern boundary and 495.92 feet on the northern boundary, with a width in the rear of 202.76 feet.

> According to the survey of Wilton J. Dufrene, Surveyor, dated December 20, 1996, a copy of which is registered in COB 2953, folio 686 Official Records of Jefferson Parish, Lot 43B-10 is described as follows:

> Commence at a point in the Southwesterly line of Manhattan Boulevard, 1000 feet distance in a southeasterly direction from the intersection of the same with the southeasterly line of Westbank Expressway, measured along a bearing of South 29°23'49" East, run thence in a southeasterly direction, along the southwesterly line of Manhattan Boulevard, bearing South 29°23'49" East, a distance of 200 feet to point; thence turn right and run in a southwesterly direction being South 52°48'42" West, a distance of 501.11 feet to a point; thence turn right and run in a northwesterly direction, bearing North 27°56'36" West, a distance of 202.76 feet per title (200.76 feet actual) to a point; thence turn right and run in a northeasterly direction, bearing North 52°48'42" East, a distance of 495.92 feet per title (495.97 feet actual) to the point of beginning on Manhattan Boulevard.

(defined in the Mortgage as the "Land").  The term "Mortgaged Property" as used herein

has the same definition provided by the Mortgage, which includes the Land, the

improvements thereon, the moveable property therein, all revenue generated by the

7

Mortgaged Property, and all insurance policies for the Mortgaged Property, among other items.  *See* Exhibit 5, pp. 10-11.

20.     According to the terms of the Mortgage, it was given to secure the repayment of the Note and all renewals, extensions, and modifications thereof. Exhibit 5, p. 4. The Mortgage includes several Events of Default, including the default in the payment of principal or interest due under the Note. *See* Exhibit 5, pp. 27-28.

21.     The Note provides that Borrower shall make monthly payments on the balance due on or before the first day of each month. Exhibit 5, p. 2.

22.     Section 22 of the Mortgage identifies several actions or events that constitute Events of Default under the Mortgage, including Borrower's failure to pay any amounts due under the Note.  Exhibit 5, p. 27.

23.     The Mortgage states that Borrower "confesses judgment and acknowledges to be indebted to and in favor of Lender up to the full amount of the Indebtedness including principal, interest, prepayment premiums, late charges, default interest, costs, expenses, collection attorneys' fees, and any additional sums Lender may advance."  Exhibit 5, p. 46. Further, the Mortgage states that Borrower specifically waives: (1) the benefit of appraisal as provided in the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three-day's delay as provided under the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under the Louisiana Code of Civil Procedure; (4) and all other benefits provided under the Louisiana Code of Civil Procedure.  Exhibit 5, p. 46.

8

24.     The Mortgage memorializes Borrower's written agreement that if any or all of the Mortgaged Property is seized incident to the enforcement of the Mortgage, that the Court issuing such order should, if requested by the Lender, appoint the Lender or any agent or other person designated by the Lender as Keeper of the Mortgaged Property seized, as provided under La. R.S. §§ 9:5136, *et seq.* Exhibit 5, p. 47. Such Keeper is entitled to reasonable fees that shall be treated as a disbursement made under the Mortgage and shall be secured by the Mortgage. Exhibit 5, p. 47.

25.     The Mortgage also requires Borrower to keep the property insured at all times. Exhibit 5, p. 24. The Mortgage further provides that if the Property is damaged, Borrower must notify Capital of any payment received from an insurer and "Lender shall (1) hold the balance of such proceeds to be used to reimburse Borrower for the cost of restoring and repairing the Mortgage Property to the equivalent of its original condition or to a condition approved by Lender, or (2) apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due." Exhibit 5, p. 25.

### D.     Additional Collateral – Pledge of Leases and Rents.

26.     The Mortgage also contains a pledge of Borrower's "rights, title and interest in, to and under the Leases", including Borrower's right to modify, extend, or terminate the Master Leases. *See* Exhibit 5, pp. 15-16. This pledge includes a pledge of the Master Lease, and all of Borrower's rights and remedies thereunder against West Jefferson.  Accordingly, any breach of the Master Lease by Borrower, Master Tenant, and/or its Subtenant (*i.e.,* West Jefferson) constitutes a breach of Borrower's obligations under the Mortgage.

9

### E.      Additional Collateral – Security Agreement from Defendant.

27.      The Mortgage also contains a grant of a security interest in all of the Mortgaged Property that is "UCC Collateral," as that term is defined in the Mortgage. *See* Exhibit 5, pp. 14-15.  Borrower's grant of security interests was perfected by the filing of two (2) UCC-1 Financing Statements in the Uniform Commercial Code Records of Jefferson Parish, Louisiana, on September 19, 2017, File No. 26365268, and File No. 26365271 (the "UCC-1s").  True and correct copies of the UCC-1s are attached to this Complaint and incorporated herein by reference as **Exhibit 6**.

### F.      Additional Collateral – Security Agreement & Guaranty from Master Tenant.

28.      To provide additional security for Borrower's debts to Capital, Master Tenant executed that certain "Master Tenant Security Agreement" dated September 1, 2017, granting Capital "a continuing security interest in any and all of Master Tenant's right, title and interest in and to the property described on Exhibit B," which specifically includes insurance proceeds from such property. *See* Exhibit 7, pp. 12, 27.  A true and correct copy of the Master Tenant Security Agreement is attached to this Complaint and incorporated herein by reference as **Exhibit 7**.

29.      Master Tenant also guaranteed payment of Borrower's obligations to Capital. The Master Tenant Security Agreement states: "To the extent of the Collateral, this Agreement constitutes an absolute, unlimited, unconditional and continuing guaranty of payment, not collection." Exhibit 7, ¶ 21(e).

30.    Master Tenant's grant of security interests was perfected by the filing of two (2) UCC-1 Financing Statements in the Uniform Commercial Code Records of Jefferson Parish, Louisiana, on September 19, 2017, Instrument No. 26365269 and Instrument No. 26365272 (the "Master Tenant UCC-1s"). True and correct copies of the Master Tenant UCC-1s are attached to this Complaint and incorporated herein by reference as **Exhibit 8**.

> ### G.    Additional Collateral – Security Agreement & Guaranty from Uptown.

31.    To provide additional security for Borrower's debts to Capital, West Jefferson executed that certain "Operator Security Agreement" dated September 1, 2017, granting Capital "a continuing security interest in any and all of Operator's right, title and interest in and to the property described on Exhibit B," which specifically includes insurance proceeds from such property. *See* Exhibit 9, pp. 8, 25, 26. A true and correct copy of the Operator Security Agreement is attached to this Complaint and incorporated herein by reference as **Exhibit 9**.

32.    West Jefferson also guaranteed payment of Borrower's obligations to Capital. The Operator Security Agreement states: "To the extent of the Collateral, this Agreement constitutes an absolute, unlimited, unconditional and continuing guaranty of payment, not collection." Exhibit 9, ¶ 21(e).

33.    West Jefferson's grant of security interests was perfected by the filing of two (2) UCC-1 Financing Statements in the Uniform Commercial Code Records of Jefferson Parish, Louisiana, on September 19, 2017, Instrument No. 26365270 and Instrument No. 26365273 (the "West Jefferson UCC-1s"). True and correct copies of the West Jefferson

UCC-1s are attached to this Complaint and incorporated herein by reference as **Exhibit 10**.

34.     The movable property collateral pledged by Borrower, Master Tenant, and West Jefferson in the Mortgage, Master Tenant Security Agreement, and Operator Security Agreement (collectively, the "Collateral Pledge Documents") is collectively referred to herein as the "Movable Property."  Movable Property owned by the Borrower is a subset of the Mortgaged Property.

### H.     Defaults Under the Mortgage and Related Agreements

35.     Borrower failed to make the November 1, 2021 payment due under the Note. Further, Borrower, Master Tenant, and West Jefferson have failed to cure or make good the missing November 1, 2021 payment for more than thirty (30) days.

36.     Defendants' failure to make the November 1, 2021 payment when due, and failure to cure or make good the missing November 1, 2021 payment within thirty (30) days, is an Event of Default under the Note, the Mortgage, Master Tenant Security Agreement, and Operator Security Agreement. *See* Exhibit 4, pp. 5-6; Exhibit 5, p. 27; Exhibit 7, ¶ 8; Exhibit 9, ¶ 8.

37.     Capital sent notice of default and demand for immediate payment to Defendants by letter dated December 15, 2021. A true and correct copy of Capital's December 15, 2021 letter is attached to this Complaint and incorporated herein by reference as **Exhibit 11**.

38.     The Mortgage provides that at any time during the existence of an Event of Default, Capital, at its option, may accelerate the maturity and of and declare the

12

Indebtedness to be immediately due and payable, and may cause the Mortgaged Property and Movable Property to be immediately seized and sold, in whole, in part, or separately, in accordance with Louisiana law. Exhibit 5, p. 46. The term "Indebtedness" is defined to mean "the principal of, interest on, and all other amounts due at any time under the Note or the Loan Documents, including prepayment premiums, late charges, default interest, and advances to protect the security as provided in the Loan Documents." Exhibit 5, pp. 7-8.

39.     Capital exercises its right under the Mortgage and Note to declare the Indebtedness immediately due and payable.

40.     As of December 31, 2021 (the "Calculation Date"), the outstanding principal balance due on the Note totals $4,717,971.52, accrued regular interest totals $45,796.94, and penalties and other fees total $47,179.72, for a total amount due of $4,810,948.18, as of the Calculation Date, excluding attorneys' fees and other costs of collection and fees due under the Note and related agreements. Interest continues to accrue at the rate of 3.89% per annum, though Capital reserves the right to begin charging interest at the default rate without further notice. Attorneys' fees, costs of collection, and other charges stated in the Note continue to accrue. The Note specifies that Borrower shall pay any reasonable attorneys' fees incurred in connection with efforts to collect any amount due under the Note or in connection with any foreclosure proceedings. Exhibit 4, p. 5.

### H.     Right to Keeper.

41.     Capital, pursuant to its rights under the Mortgage and applicable law, wishes to appoint H.G.I., LLC as Keeper for the Mortgaged Property, for the period between seizure of the Mortgaged Property and its sale, to serve without bond, and to be paid for its

services and to be reimbursed for reasonable expenses and fees as provided in the Mortgage, La. R.S. § 9:5138, and other applicable law, with all rights and powers as stated in the proposed order filed with this Complaint.

**COUNT I – JUDGMENT FOR BALANCE DUE ON
THE NOTE AND TO FORECLOSE ON THE MORTGAGE**

42.    Capital incorporates each and every allegation asserted in the previous paragraphs into Count I as if copied *in extenso*.

43.    Defendants have failed to comply with their obligations under the Note, Mortgage, Security Agreements, and related agreements, specifically Borrower's obligations to make payment when due under the Note.

44.    Consequently, an Event of Default has occurred, and is continuing, under the Mortgage and Security Agreements. Capital has exercised its right to accelerate the full amount due pursuant to the terms of the Note and the Mortgage. *See* Exhibit 4, p. 3; Exhibit 5, p. 46.

45.    Borrower owes Capital in excess of $4,810,948.18 in principal, accrued interest, and penalties and other charges as of December 31, 2021. In addition, Borrower owes Capital other costs, charges, fees, and expenses provided for by contract or law, including, but in no way limited to, interest as it continues to accrues at the rate of 3.89% per annum, Capital's costs of collection, and the costs of these proceedings, including all attorneys' and Keeper's fees and expenses.

4859-7767-5008 v1

46.     Pursuant to the Note, Mortgage, and associated documents, Capital is entitled to a judgment against Borrower for all amounts set forth in the previous paragraphs and foreclosure on the Mortgaged Property.

47.     Capital is entitled to, and hereby requests, a judgment recognizing the validity, perfection, and priority of its mortgage, liens, security interests, and privileges imposed on the Mortgaged Property by virtue of the Mortgage, including a declaration that Capital's interests in the Mortgaged Property will prime and extinguish any rights that Borrower, Master Tenant, or West Jefferson may have in the Mortgaged Property, including the Movable Property, upon foreclosure.

## COUNT II – JUDGMENT ON MASTER TENANT SECURITY AGREEMENT AND GUARANTY

48.     Capital incorporates each and every allegation asserted in the previous paragraphs into Count II as if copied *in extenso*.

49.     Master Tenant has failed to comply with its obligations under the Master Tenant Security Agreement and related agreements, specifically its guaranty of payment under the Note.

50.     Consequently, an Event of Default has occurred, and is continuing, under the Master Tenant Security Agreement. Capital has exercised its right to accelerate the full amount due pursuant to the terms of the Note and the Master Tenant Security Agreement. *See* Exhibit 4, p. 3; Exhibit 7, ¶ 9.

51.     Borrower and Master Tenant owe Capital in excess of $4,810,948.18 in principal, accrued interest, and late charges as of December 31, 2021. In addition,

Borrower and Master Tenant owe Capital other costs, charges, fees, and expenses provided for by contract or law, including, but in no way limited to, interest as it continues to accrues at the rate of 3.89% per annum, Capital's costs of collection, and the costs of these proceedings, including all attorneys' and Keeper's fees and expenses.

52.     Pursuant to the Note, Mortgage, Master Tenant Security Agreement, and associated documents, Capital is entitled to a judgment against Master Tenant for all amounts set forth in the previous paragraphs and foreclosure on the Movable Property.

53.     Capital is entitled to, and hereby requests, a judgment recognizing the validity, perfection, and priority of its security interest on the Movable Property by virtue of the Master Tenant Security Agreement and UCC-1 filings referenced above, including a declaration that Capital's interests will prime and extinguish any rights Master Tenant may have in the Movable Property upon foreclosure.

## COUNT III – JUDGMENT ON OPERATOR
## SECURITY AGREEMENT AND GUARANTY

54.     Capital incorporates each and every allegation asserted in the previous paragraphs into Count III as if copied *in extenso*.

55.     West Jefferson has failed to comply with its obligations under the Operator Security Agreement and related agreements, specifically its guaranty of payment under the Note.

56.     Consequently, an Event of Default has occurred, and is continuing, under the Operator Security Agreement. Capital has exercised its right to accelerate the full amount

due pursuant to the terms of the Note and the Operator Security Agreement. *See* Exhibit 4, p. 3; Exhibit 9, ¶ 9.

57.     Borrower and West Jefferson owe Capital in excess of $4,810,948.18 in principal, accrued interest, and late charges as of December 31, 2021. In addition, Borrower and West Jefferson owe Capital other costs, charges, fees, and expenses provided for by contract or law, including, but in no way limited to, interest as it continues to accrues at the rate of 3.89% per annum, Capital's costs of collection, and the costs of these proceedings, including all attorneys' and Keeper's fees and expenses.

58.     Pursuant to the Note, Mortgage, Operator Security Agreement, and associated documents, Capital is entitled to a judgment against West Jefferson for all amounts set forth in the previous paragraphs and foreclosure on the Movable Property.

59.     Capital is entitled to, and hereby requests, a judgment recognizing the validity, perfection, and priority of its security interest on the Movable Property by virtue of the Operator Security Agreement and UCC-1 filings referenced above, including a declaration that Capital's interests will prime and extinguish any rights West Jefferson may have in the Movable Property upon foreclosure.

## COUNT IV – WRIT OF SEQUESTRATION

60.     Capital incorporates each and every allegation asserted in the previous paragraphs into Count IV as if copied *in extenso*.

61.     Rule 64 of the Federal Rules of Civil Procedure authorizes this Court to utilize Louisiana state law remedies for seizing property to secure satisfaction of a potential

judgment, including the remedy of sequestration pursuant to Articles 3571-76 of the Louisiana Code of Civil Procedure.

62.    Louisiana Code of Civil Procedure Article 3571 provides that when a plaintiff claims "a mortgage" upon certain property, and "if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom . . . during the pendency of the action" that plaintiff "may have the property seized under a writ of sequestration." (*See also*, La. R.S. § 9:5136, *et seq.* which mandates the appointment of a keeper for property seized under a writ of sequestration where the parties have provided for such in the act of mortgage). According to Article 3501 of the Louisiana Code of Civil Procedure, a writ of sequestration shall issue when the nature of the claim, the amount thereof, and the grounds for relief upon the issuance of the writ are set forth in a verified complaint.

63.    Borrower, Master Tenant, and West Jefferson remain in default with respect to the Note, Mortgage, Master Tenant Security Agreement, Operator Security Agreement, and associated documents.

64.    Borrower owns, and through an affiliated operating entity (West Jefferson) operated, the Mortgaged Property. Borrower, directly and through affiliates, has the ability to use its power and control over the Mortgaged Property to conceal, dispose of, and waste the Mortgaged Property and the revenues it may generate.

65.    Further, the Mortgaged Property suffered damage from Hurricane Ida and is in immediate need of repairs. Upon information and belief, Borrower has not undertaken

to make the necessary repairs, and further damage to the Mortgaged Property is imminent. Accordingly, a writ of sequestration during the pendency of this action is warranted.

66.     Further, Defendants have made claims for the insurance proceeds from the Mortgaged Property and the Movable Property, which proceeds are Capital's collateral. One or more of Defendants (or an affiliate also controlled by Dean) is holding – and may have negotiated – at least one check from an insurer in partial payment for insured losses sustained at the Mortgaged Property (the "Insurance Payment"). Defendants have refused to endorse and to deliver the Insurance Payment to Capital as required by the Collateral Pledge Documents, and have declined Capital's request to have all future insurance payments related to the Mortgaged Property and the Movable Property made directly to Capital to fulfill Borrower's obligations under the Mortgage.

67.     The damaged and deteriorating condition of the Mortgaged Property, the need for immediate repair, the loss of insurance proceeds owed to Capital, and the risk that one or more Defendants will take for itself (directly or through affiliates also controlled by Dean) future insurance proceeds more than justifies the appointment of a keeper while these proceedings are pending. Accordingly, a writ of sequestration during the pendency of this action is warranted.

### COUNT V – APPOINTMENT AND POWERS OF KEEPER

68.     Capital incorporates each and every allegation asserted in the previous paragraphs into Count V as if copied *in extenso*.

69.     Rule 64 of the Federal Rules of Civil Procedure authorizes this Court to utilize Louisiana state law remedies for seizing property to secure satisfaction of a potential

19

judgment, including the remedy of appoint a keeper of property under a writ of sequestration pursuant to La. R.S. §§ 9:5136-40.

70.     As set forth in Count IV, Borrower owns, and through an affiliated operating entity (West Jefferson) operated, the SNF on the Mortgaged Property. It is within Defendant's power to conceal, dispose of, and waste the Mortgaged Property and the revenues it generates.

71.     As such, the appointment of a Keeper to manage the Mortgaged Property is merited and also explicitly authorized in the Mortgage. Louisiana Revised Statutes §§ 9:5136 & 5137(A) mandate the appointment of a Keeper for the Mortgaged Property at Capital's request in the event the Mortgaged Property is seized under a writ of sequestration where such relief has been provided for by the parties in their mortgage, as was done in the Mortgage. *See* Exhibit 5, p. 47.

72.     Capital desires to appoint H.G.I., LLC as Keeper, for the period between seizure of the Mortgaged Property and its sale, to serve without bond, and to be paid according to the Mortgage and to be reimbursed for reasonable expenses and fees as provided in the Mortgage, La. R.S. § 9:5138, and other applicable law, with all rights and powers as stated in the proposed order filed with this Complaint.

73.     Additionally, Capital requests that at the time of the seizure, Borrower, Master Tenant, West Jefferson, and/or the current property manager, be ordered to deliver to the Keeper:

(1) all books, records, and any other documents or records, in every format that they are now or have been maintained;

(2) all keys, access codes, and any other instruments and mechanisms of security, access, and control pertaining in any way whatsoever to the Property of to the management and/or operation of the premises;

(3) any on site cash, checks, or funds;

(4) a list of employees;

(5) a list of current contracts such as utility contracts, maintenance contracts, etc. that Keeper may need to commence/continue operation of the Property; and

(6) any other information Keeper may, in its discretion, need to operate the Property.

74.     Pursuant to the Mortgage and assignment of leases therein, including the Master Lease, Capital, through the Keeper, is entitled to be paid all of the leases and rents and other funds previously collected, currently collected, or collected in the future from the Property, wherever located, whether in Defendants' possession or on deposit with a lending institution, in priority to any other claims. Further, Capital desires that all leases and rents be seized in accordance with Louisiana Code of Civil Procedure Art. 2327 and paid to the Keeper for application, as provided in the Note, Mortgage, Master Lease, and other documents and, if any funds are remaining, for application to the indebtedness owed to Capital.

## **PRAYER**

**WHEREFORE,** Capital Funding, LLC respectfully prays for:

75.     Pursuant to Count I – A judgment in favor of Capital and against the Borrower for all amounts due under the Note, including: (1) the outstanding principal balance owed under the Note totaling $4,717,971.52, (2) accrued, but unpaid regular interest of $45,796.94 as of December 31, 2021, (3) penalties and other fees of $47,179.72,

and (4) all attorneys' fees, costs of collection, and other charges due, less credit for any payments received;

76.     Pursuant to Count I – A judgment in favor of Capital and against Borrower for interest as it continues to accrue at the rate of 3.89% per annum from January 1, 2022, plus all accrued and accruing late fees, costs of collection, and all other amounts due under the Note until all amounts due are paid in full;

77.     Pursuant to Count I – A judgment in favor of Capital and against Borrower for all of Capital's costs of collection, including without limitation, attorneys' fees and costs, Keeper costs, fees and expenses, and court costs of this proceeding;

78.     Pursuant to Count I – A judgment recognizing and maintaining the mortgage, lien, and privilege granted in favor of Capital by the Mortgage, and recognizing and maintaining their validity, priority, and enforceability to pursuant to Louisiana law;

79.     Pursuant to Count II – A judgment in favor of Capital and against Master Tenant for all amounts due under the Note, including: (1) the outstanding principal balance owed under the Note totaling $4,717,971.52, (2) accrued, but unpaid regular interest of $45,796.94 as of December 31, 2021, (3) penalties and other fees of $47,179.72, and (4) all attorneys' fees, costs of collection, and other charges due, less credit for any payments received;

80.     Pursuant to Count II – A judgment in favor of Capital and against Master Tenant for interest as it continues to accrue at the rate of 3.89% per annum from January 1, 2022, plus all accrued and accruing late fees, costs of collection, and all other amounts due under the Note until all amounts due are paid in full;

81.    Pursuant to Count II – A judgment in favor of Capital and against Master Tenant for all of Capital's costs of collection, including without limitation, attorneys' fees and costs, Keeper costs, fees and expenses, and court costs of this proceeding;

82.    Pursuant to Count II – A judgment recognizing and maintaining the security interest granted in favor of Capital by the Master Tenant Security Agreement, and recognizing and maintaining their validity, priority, and enforceability to pursuant to Louisiana law;

83.    Pursuant to Count III – A judgment in favor of Capital and against West Jefferson for all amounts due under the Note, including: (1) the outstanding principal balance owed under the Note totaling $4,717,971.52, (2) accrued, but unpaid regular interest of $45,796.94 as of December 31, 2021, (3) penalties and other fees of $47,179.72, and (4) all attorneys' fees, costs of collection, and other charges due, less credit for any payments received;

84.    Pursuant to Count III – A judgment in favor of Capital and against West Jefferson for interest as it continues to accrue at the rate of 3.89% per annum from January 1, 2022, plus all accrued and accruing late fees, costs of collection, and all other amounts due under the Note until all amounts due are paid in full;

85.    Pursuant to Count III – A judgment in favor of Capital and against West Jefferson for all of Capital's costs of collection, including without limitation, attorneys' fees and costs, Keeper costs, fees and expenses, and court costs of this proceeding;

4859-7767-5008 v1

86.     Pursuant to Count III – A judgment recognizing and maintaining the security interest granted in favor of Capital by the Operator Security Agreement, and recognizing and maintaining their validity, priority, and enforceability to pursuant to Louisiana law;

87.     Pursuant to Counts I-III, a declaratory judgment that Capital's interest in the Mortgaged Property, including the Movable Property, prime, and upon foreclosure will extinguish, any rights of Defendants in or to the Mortgaged Property, including the Movable Property;

88.     Pursuant to Count IV – That the Court issue a writ of sequestration in favor of Capital, with respect to the immovable and movable property described herein, with the immovable property bearing the municipal address of 1020 Manhattan Boulevard, Harvey, LA 70058, said writ to remain in place pending the sale of the Mortgaged Property or further order of the Court;

89.     Pursuant to Count V – That H.G.I., LLC be designated Keeper of the Mortgaged Property and all Movable Property and that the Keeper Order (submitted simultaneously herewith), be signed *ex parte* by the Court;

90.     Pursuant to Count V – That the compensation for the Keeper be assessed as part of the cost of administering the Mortgaged Property and Movable Property, and, if the Mortgaged Property and Movable Property fail to generate sufficient income to pay the costs, fees, and expenses of the Keeper, said costs, fees, and expenses shall be included in the balance due under the Note, Mortgage, Master Tenant Security Agreement, and Operator Security Agreement;

91.     Pursuant to Count V – That the Keeper, pursuant to the Note, Mortgage, and La. R.S. § 9:4401 *et seq*., be paid all of the leases and rents generated by the Mortgaged Property, in priority to any other claims, and shall be paid those rents directly by the tenants or other persons or entities responsible for the payment of rents upon the Keeper's compliance with La. R.S. § 9:4401(G);

92.     Pursuant to Count V – That, pursuant to the Note, Mortgage, and applicable law, all rents and revenue produced by the Mortgaged Property while under seizure be seized and furnished directly the Keeper of the Mortgaged Property and Movable Property to be distributed and paid pursuant to the priority, as provided in the Note and Mortgage;

93.     That the Court grant Capital all general and equitable relief this Court deems just and proper.

Respectfully submitted:


/s/ Katilyn M. Hollowell
James R. Chastain, Jr. (#19518)
sonny.chastain@keanmiller.com
J. Eric Lockridge (#30159) – T.A.
eric.lockridge@keanmiller.com
Katie Hollowell (#37729)
Katie.hollowell@keanmiller.com
**KEAN MILLER LLP**
400 Convention Street, Suite 700
P. O. Box 3513 (70821-3513)
Baton Rouge, LA  70802
Telephone:  (225) 387-0999

***Attorneys for Capital Funding, LLC***

4859-7767-5008 v1